UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

M.D. CLAIMS GROUP, LLC ET AL.　　　　　　　　CIVIL ACTION

VERSUS

ANCHOR SPECIALTY INSURANCE　　　　　　　　NO.: 17-00369-BAJ-RLB
COMPANY ET AL.

## RULING AND ORDER

Before the Court is the **Motion for Partial Summary Judgment (Doc. 20)**, filed by Defendants Anchor Specialty Insurance Company and Lozano Insurance Adjusters, Inc. Plaintiffs, M.D. Claims Group, L.L.C, Darryn Melerine, and Richard Broom, filed a Memorandum in Opposition (Doc. 31). For the reasons stated herein, the **Motion for Summary Judgment (Doc. 20)**, is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

Mr. Melerine and Mr. Broom are, respectively, the majority and minority owners of M.D. Claims Group, L.L.C. ("M.D. Claims"). (*Id.* at 3). Anchor Specialty Insurance Company ("Anchor") and Lozano Insurance Adjusters, Inc. ("Lozano") hired Mr. Melerine and Mr. Broom through their role at M.D. Claims to run Anchor's Beaumont, Texas Claims Department and provide claims management services. (Doc. 31 at p. 2).[1] Plaintiffs allege that they were compensated for their claim

---

[1] Anchor had previously purchased Lozano, but Lozano continued to exist as a subsidiary entity owned by Anchor. (Doc. 20-1 at p. 2)

1

management services based upon a fee schedule. Initially, the nominal daily rates for Mr. Melerine and Mr. Broom were $650 and $550 respectively. (*Id.* at 2).

Plaintiffs assert that while working for Anchor, the scope of their duties evolved from the claims management services initially agreed upon. (Doc. 31 at p. 3). Anchor's Vice President of Claims, Rick Larson, allegedly asked Mr. Melerine if M.D. Claims could do additional work for Anchor. (*Id.*). This work allegedly included reorganizing the Texas Claims Department, reducing utilization of independent adjusting firms, relationship building with industry professionals, and recruiting staffing for Lozano and Anchor's offices in Texas and Florida. (*Id.*). Anchor ended its relationship with M.D. Claims in February 2017. (Doc. 20-1 at p. 2).

Plaintiffs argue that Defendants failed to fully compensate them based on the original daily rates. Plaintiffs also assert that Defendants failed to compensate them for the additional services Plaintiffs provided. (Doc. 31 at p. 3). Defendants respond that these tasks fell within the initial scope of services Plaintiffs agreed to provide and thus, they were not owed additional compensation. Plaintiffs seek to recover $486,062.37 Defendants allegedly owe them. (Doc. 31 at p. 6). Plaintiffs bring suit against Defendants for (1) breach of contract, (2) violation of the Louisiana Wage Payment Act, (3) violation of Louisiana Civil Code, article 1997, and (4) violation of Louisiana Revised Statute 9:2781(A). (Doc. 1).

## II. LEGAL STANDARD

Pursuant to Rule 56, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School Dist*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element

essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will be appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III. DISCUSSION

### A. Claim of $158,422.37 for Adjusting Services

Plaintiffs allege that they are entitled to $158,422.37 on an open account for claims adjusting services (Doc. 1-2 at p. 4). This claim appears to refer to the amount owed by Defendants with respect to the original agreed upon $650 and $550 daily rates. Defendants move to dismiss part of this claim, asserting that they paid Plaintiffs $152,966.82 after Plaintiffs instigated this suit. (Doc. 20-1 at p. 15). Plaintiffs do not dispute this. (Doc. 31 at p. 10) As such, any claims for adjusting services regarding the $152,966.82 Defendants have already paid are dismissed.

### B. Breach of Contract Claim

Defendants move to dismiss Plaintiffs' breach of contract claim because they argue that a contract in which Defendants agreed to pay Plaintiffs money in excess of the initially agreed upon daily rates of $650 and $550 never existed. (Doc. 20-1 at p. 7).

To prove breach of contract, a plaintiff must prove that (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform the obligation,

4

and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 10-986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108-09. With respect to the first element, Louisiana courts have held that a "contract is formed by the consent of the parties established through offer and acceptance. Thus, an enforceable contract requires a meeting of the minds." *Read v. Willwoods Cmty.*, 14-1475 (La. 3/17/15); 165 So.3d 883, 887. Plaintiffs and Defendants agree that there was no written contract or agreement relating to any of the services Plaintiffs provided. (Doc. 20-3 at p. 4, Doc. 31-2 at p. 2). However, the law is clear that the absence of a written agreement does not preclude the existence of a contract. LA. CIV. CODE ANN. art. 1927 ("offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent").

In the instant case, the record indicates Plaintiffs and Defendants formed an oral contract that at least involved Plaintiffs providing claim management services to Defendants. (Doc. 31-7 at p. 4). Mr. Melerine was paid a nominal daily rate of $650, while Mr. Broom was paid a nominal daily rate of $550 for these services. (Doc. 20-3 at p. 3). However, there remains a dispute of material fact as to what "claim management" entailed. Mr. Larson in his deposition repeatedly indicated that all of the services Plaintiffs provided, even those that Plaintiffs assert fell outside the scope of what Plaintiff was initially hired to do, fell under Mr. Melerine's responsibilities as a claims manager. These include reviewing claims processes, organizing and performing training on claims management software, insuring that the office was practicing best claims practices, reorganizing the claims department, and updating

claims manuals. (Doc. 20-4 at pp. 4, 6, 12; Doc. 31-2 at p. 9). Plaintiffs dispute this. (Doc. 31-2 at p. 10). They assert that Mr. Larson asked Mr. Melerine to take on work "on top of" cleaning up and organizing the Texas office, suggesting that Defendants may have asked Plaintiffs to perform tasks beyond their original agreement. (Doc. 31-2 at p. 19). As such, there remains a material dispute of fact as to what services the original oral contract between Plaintiffs and Defendants encompassed.

Moreover, there also remains a dispute of material fact as to whether Plaintiffs and Defendants formed a new contract regarding any additional services Plaintiffs provided. Defendants assert that at no point did they offer, much less agree, to pay Defendants beyond the nominal daily rates of $650 and $550. (Doc. 20-3 at p. 3). In contrast, Mr. Melerine testified in his deposition that he spoke with Mr. Larson about Plaintiffs' extra responsibilities and how he might be compensated for those tasks. (Doc. 31-2 at p. 11). Plaintiffs also claim that Mr. Melerine accepted Mr. Larson's offer to take on additional work. (Doc. 31 at p. 13). Given this evidence, the Court concludes that there remains a material dispute of fact as to whether the parties entered into an oral contract regarding payment for extra services provided by Plaintiffs. Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' breach of contract claims.

### C. Claim of $325,000 for Consulting Services

Defendants move to dismiss Plaintiffs' claim for payment of $325,000 allegedly due on an open account for payment for consulting services. (Doc. 20-1 at p. 12). These are the same services that Plaintiffs assert fell outside of their original job

description. Defendants argue that because there was no separate agreement regarding consulting services, the claim for payment on the open account should be dismissed. (*Id.*). However, the Court has already concluded that there remains a dispute of material fact as to whether a contract existed regarding Plaintiffs' alleged additional consulting services. Accordingly, Defendants are not entitled to summary judgment on the open account claim.

### D. Louisiana Wage Payment Act

Defendants move to dismiss Plaintiffs' claim based on the Louisiana Wage Payment Act ("LWPA"). This statute requires an employer to pay a terminated employee within fifteen days of discharge or on the next payday, whichever comes first. LSA–R.S. 23:631. Defendants assert that that Mr. Melerine, Mr. Broom, and M.D. Claims Group worked as independent contractors rather than employees for Defendants, and thus the statute does not apply to this case.

Louisiana courts look to the following non-exclusive factors to determine whether an individual is an independent contractor versus an employee for purposes of the LWPA: (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a

specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Tillman v. Louisiana Children's Med. Ctr.*, No. CV 16-14291, 2017 WL 1399619, at *3 (E.D. La. Apr. 19, 2017).

The Court concludes that there is no dispute of material fact as to whether Plaintiffs worked as employees for Defendants. As Defendants indicate, Mr. Melerine himself admits that he considered himself an independent contractor. (Doc. 20-3 at p. 36). Furthermore, Mr. Melerine was hired as a 1099 worker.[2] *Hair v. Louisiana Crane & Trucking Co.*, 43-566 (La. App. 2 Cir. 9/17/08); 996 So.2d 435, 437 (finding that a Form 1099 is indicative of a principal independent contractor relationship rather than employer-employee relationship). Third, Plaintiffs were hired to provide claim management services for Anchor's Beaumont office, which was a specific and circumscribed task. (Doc. 31 at p. 2). Fourth, the evidence indicates that Plaintiffs worked relatively independently, overseeing day-to-day claim department activities. (*Id.*). Finally, Plaintiffs themselves admit that the services they provided were more in line with services performed by a third-party administrator or outside consultant, which would indicate that they did not work as employees. (Doc. 31 at p. 3).

Plaintiffs argue that Mr. Melerine, Mr. Broom, and M.D. Claims group worked as Defendants' employees because Defendants were able to adjust Mr. Melerine's day rate and because Anchor insisted on the number of work hours to be performed. Regarding the adjustment in day rate, Plaintiffs highlight that Mr. Melerine's day

---

[2] "1099" refers to workers who receive a Form 1099 at the end of the tax year indicating that they are independent contractors. This is in contrast to the W-2 form that traditional employees receive. *Hair*, 996 So.2d at 437.

8

rate was adjusted from $650 to $550, suggesting that there was no specific price agreed for his work. (Doc. 31 at pp. 14-15). However, Mr. Kenneth Schwartz, claim manager for Anchor, testified in his deposition that the daily rate was adjusted to account for fluctuations in the volume of claims Mr. Melerine was handling. (Doc. 31-2 at p. 4). Mr. Schwartz also indicated that rates can be adjusted depending on the demand for independent contractors. (*Id.*) Moreover, Anchor considered adjusting the day rate for all 1099 independent contractors at the time. (*Id.*). Thus, the adjustment in the daily rate is sufficient to indicate that Plaintiffs worked as employees for Anchor. Second, the mere fact that Anchor insisted on the number of hours worked by Plaintiff, is not sufficient to preclude Plaintiffs from being considered to be independent contractors, given the other facts the Court has highlighted. As such, Plaintiffs claims under the Louisiana Wage Payment Act are dismissed.

### E. Bad Faith Damages

Defendants move to dismiss Plaintiffs' claim for bad faith damages under the Louisiana Civil Code, which provides that an "obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform." LA. CIV. CODE. art. 1997. Bad faith is not "mere bad judgment or negligence[;] it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Volentine v. Raeford Farms of La., LLC*, 50,698 (La. App. 2 Cir. 2016); 201 So. 3d 325, 338. Even so, Plaintiffs rightfully contend that summary judgment is rarely appropriate where motivation and intent are at issue. *Goree v. Lincoln Parish Detention Center Com'n*, No. 09-745, 2010 WL 4295328, at * 3 (W.D. La. Oct. 22,

2010) (citing *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (rev'd on other grounds)). Here, there remains a dispute of material fact as to Anchor's motivation in withholding payments. First, the Court notes that Anchor issued payment of $152,996.82 in July of 2017 for invoices allegedly dating back as long as a year. (Doc. 20-1 at p. 14). It does not appear that this was a result of mere negligence or oversight, but rather, a purposeful decision. Moreover, as previously stated, the parties dispute whether a contract pertaining to any additional services provided by Plaintiffs existed. Plaintiffs have presented evidence that they provided these services and were not compensated with extra payments. (Doc. 31-2 at p. 9). Plaintiffs have also presented evidence that they communicated with Defendants regarding additional payment. (*Id.*). Thus, the Court concludes that a reasonable jury could find that Defendants acted in bad faith in purposefully failing to pay Plaintiffs for both the original amount owed and any additional services Plaintiffs may have provided.[3] Accordingly, Defendants are not entitled to summary judgment on the bad faith claim.

### F. Attorney's Fees under Louisiana Revised Statute 9:2781(A)

Defendants move to dismiss Plaintiff's claim for attorney's fees under Louisiana Revised Statute 9:2781, which entitles a claimant that submits a demand letter correctly setting forth the amount owed on an open account to attorney's fees. LSA–R.S. 9:2781(A). Defendants assert that because Plaintiff's set forth a demand letter for $325,000, which was not the amount actually owed, this claim should be

---

[3] Often, motivation and intent can only be proved through circumstantial evidence. *Thornbrough*, 760 at 633.

dismissed. (Doc. 20-1 at p. 15). Defendants highlight that Mr. Schwartz testified that Plaintiffs' invoices contained inaccuracies, with duplicate requests, making their demands incorrect. (*Id.*). However, given that there remains a dispute as to how much money Defendants owe Plaintiff regarding the alleged extra services provided, there also remains a dispute as to whether Plaintiffs actually demanded the correct amount. The Court also concludes that there remains a material dispute of fact as to whether Defendants have fully compensated Plaintiffs for the claims adjusting services, given that Plaintiffs invoiced Defendants for an amount higher than was paid. (Doc. 31 at p. 10-11). As such, Defendants are not entitled to summary judgment on Plaintiffs' demand for attorney's fees.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 20)**, is **GRANTED IN PART** and **DENIED IN PART**.

Baton Rouge, Louisiana, this 21ST day of December, 2018.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

11