UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **M.D. CLAIMS GROUP, LLC ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **ANCHOR SPECIALTY INSURANCE COMPANY ET AL.** | **NO.: 17-00369-BAJ-RLB** |

## RULING AND ORDER

Before the Court is the **Motion in Limine to Exclude Plaintiffs' Expert (Doc. 36)**, filed by Defendants Anchor Specialty Insurance Company and Lozano Insurance Adjusters, Inc. Plaintiffs, M.D. Claims Group, L.L.C, Darryn Melerine, and Richard Broom, filed a Memorandum in Opposition (Doc. 39). For the reasons stated herein, the **Motion in Limine (Doc. 36)**, is **GRANTED IN PART** and **DENIED IN PART**.

### I.  BACKGROUND

Melerine and Broom are, respectively, the majority and minority owners of M.D. Claims Group, L.L.C. ("M.D. Claims"). (*Id.* at 3). Anchor Specialty Insurance Company ("Anchor") and Lozano Insurance Adjusters, Inc. ("Lozano") hired Melerine and Broom to run and provide claim management services to Anchor's Beaumont, Texas Claims Department. (Doc. 31 at p. 2).[1] Plaintiffs allege that the parties agreed that Plaintiffs would be compensated for their claim management services based

---

[1] Anchor had previously purchased Lozano, but Lozano continued to exist as a subsidiary entity owned by Anchor. (Doc. 20-1 at p. 2).

1

upon a fee schedule. Initially, the nominal daily rates for Melerine and Broom were $650 and $550 respectively. (*Id.* at 2).

Plaintiffs assert that while working for Anchor, the scope of their responsibilities evolved from the duties initially agreed upon by the parties. (Doc. 31 at p. 3). Anchor's Vice President of Claims, Rick Larson, allegedly asked Melerine if M.D. Claims could do additional work for Anchor. (*Id.*). This work allegedly included reorganizing the Texas Claims Department, reducing utilization of independent adjusting firms, relationship building with industry professionals, and recruiting staffing for Lozano and Anchor's offices in Texas and Florida. (*Id.*). Anchor ended its relationship with M.D. Claims in February 2017. (Doc. 20-1 at p. 2).

Plaintiffs assert that Defendants failed to compensate them for the additional services they provided. (Doc. 31 at p. 3). Defendants respond that the alleged additional services fell within the initial scope of services Plaintiffs agreed to provide and thus, Plaintiffs were not owed additional compensation. Plaintiffs seek to recover $486,062.37 allegedly owed to them. (Doc. 31 at p. 6). Plaintiffs bring suit against Defendants for breach of contract. (Doc. 1). Defendants, in the instant motion, seek to exclude the testimony of Quin Netzel, who Plaintiffs proffer as an expert in the services that independent adjusters provide to insurers. (Doc. 39 at p. 4).

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The Rule states that a witness "qualified as an expert by knowledge, skill, experience, training, or education" is permitted to testify if:

2

(a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 is effectively a codification of the United States Supreme Court's opinion in *Daubert*, in which the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that it is both "reliable" and "relevant." *Daubert v. Merrell Dowell Pharm., Inc.*, 509 U.S. 579, 589 (1993). *Daubert* was concerned with limiting speculative, unreliable, and irrelevant opinions from reaching a jury. *Id.* at 589 n.7.

Although "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), an expert opinion may not offer conclusions of law. See *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "An expert who usurps either the role of the judge by instructing the jury on the applicable law or the role of the jury by applying the law to the facts at issue 'by definition does not aid the jury in making a decision.'" *Taylor v. Clarke Power Services, Inc.*, Civil Action No. 16-15890, 2017 WL 5068335, at *3 (E.D. La. Nov. 2, 2017) (quoting *Nagle v. Gusman*, Civil Action No. 12-1910, 2016 WL 541436, at *5 (E.D. La. Feb. 11, 2016)(internal citations omitted).

3

## III. ANALYSIS

Plaintiffs seek to have Netzel offer expert testimony on (1) whether the alleged additional services performed by Plaintiffs fell within the initial scope of services they agreed to provide and (2) the reasonable value for the alleged additional services performed. (Doc. 39 at p. 3).

### A. Initial Scope of Services Provided by Plaintiffs

#### 1. Rule 702 Factors

Plaintiffs seek to offer Netzel to testify regarding whether the alleged additional services performed by Plaintiffs fell within the scope of the original contract. Plaintiffs claim that they were initially hired as independent adjusters by Defendants. (Doc. 39 at p. 4). Netzel will testify regarding whether the duties that Plaintiffs performed are typically performed by an independent adjuster in the insurance industry. Defendants argue that Netzel is unqualified to do so.

The Court finds that Netzel meets the factors outlined in Rule 702 to testify for this purpose. First, Netzel has specialized knowledge that will assist the jury in determining whether Plaintiffs performed the responsibilities of an independent adjuster. Netzel possesses thirty years of experience in the insurance industry. (Doc. 39-3). Netzel has held several positions in which he was directly involved in claims adjusting including his current position as Managing Director of Claim Central and his former positions as President of BrightClaim, Inc., Chief Claims Officer at Louisiana Citizens Property Insurance, and Director at Claims Recovery Operations. (*Id.*). The Court also concludes that Netzel's testimony regarding the traditional

responsibilities of an independent adjuster are based on sufficient facts and data because it is based on his years of experience in the industry and the work he has seen adjusters perform in the past. The Court acknowledges that Netzel did not refer to any treatises or reference material in reaching is conclusions. However, this is not dispositive because, as Plaintiffs pointed out in oral argument, unlike in fields such as medicine or engineering, where an abundance of scholarly work exists on a particular topic, the field of insurance adjusting is likely devoid of similar reference material. Accordingly, the Court does not find this to be prohibitive.

Defendants argue that Netzel does not have any specialized experience that defense witness Larson lacks, and thus Netzel does not add any value to the understanding of the issues in this case. However, Defendants do not cite any law and the Court has not found any support for the proposition that a witness cannot testify as an expert merely because he shares qualifications with an existing fact witness. Accordingly, the Court finds this argument to be unpersuasive.

    *2.    Limitations on Netzel's Testimony Regarding Scope of Contract*

Defendants contend that because the nature of the services Plaintiffs contracted to provide is a disputed fact, Netzel's testimony regarding the traditional responsibilities of an independent adjuster is irrelevant to the case. (Doc. 44 at p. 2). The Court disagrees. Plaintiffs in part claim that they contracted to work as independent adjusters for Defendants. And while it is true that "expert testimony on issues of contractual interpretation is inappropriate," it is also true that experts have been allowed to testify regarding the meaning of contract terms when the meaning

5

depends on trade practice. *See SJB Grp., LLC v. TBE Grp., Inc.*, No. 12-181, 2013 WL 4499032, at *3 (M.D. La. Aug. 19, 2013) (Dick, J.) (quoting *DP Concrete Prods., LLC v. Am. Spring Wire Corp.*, 2010 WL 322739 at *1 (W.D. La. 2010)). *But see Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir.2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry). The term "independent adjuster" has a specialized meaning in the insurance industry, and thus Plaintiffs are entitled to offer Netzel to testify to its generally acceptable meaning. Accordingly, Netzel's testimony regarding the traditional responsibilities of an independent adjuster is conditionally admissible.[2]

### B. Value of Services Performed by Plaintiff

Plaintiffs also offer Netzel to estimate a reasonable value of the extra-contractual services that they allegedly provided. Defendants assert that Netzel's opinions lack scientific methodology and that he failed to rigorously and reliably analyze the facts of the case. (Doc. 44 at p. 3). The Court agrees.

Netzel values the additional services that Plaintiff allegedly provided to Defendant between $385,000 to $490,000. (Doc. 39-1 at p. 4). However, Plaintiffs have not provided sufficient evidence to show that Netzel relied on sufficient facts and data to reach his conclusion, as required by Rule 702(b). For instance, one of the services that Netzel valued was Plaintiffs' completion of claim handling guidelines and best practices manuals. (Doc. 39-2 at p. 38). However, Netzel did not review the source documents Plaintiffs used in preparing such manuals, nor did he review how much

---

[2] Netzel's testimony is conditionally admissible on Plaintiffs providing evidence that Defendants hired them as independent adjusters.

time Plaintiffs spent developing them. (*Id.*) This information would determine the value of the services provided. Netzel indicated that his valuation was "based upon [his] industry experience," but the Court cannot conclude that this alone is a reliable factual basis to value the work performed. (Doc. 39-2 at p. 39).

Netzel also valued Plaintiffs' evaluation, restructuring, and reorganization of the claims department. (Doc. 36-2 at p. 14). Netzel admitted that even though he valued this service at $125,000 to $150,000, he was not aware of the specific tasks that Plaintiff performed. He stated everything he reviewed was "in general." (*Id.*) Netzel's conclusion was based merely on his knowledge of "what would be charged to a carrier of similar size to [Defendant]." As such, Netzel simply did not review enough information about the services Plaintiffs furnished to place a reliable value on their worth. Accordingly, Netzel's testimony for the purpose of providing a damages assessment must be excluded.

IV. CONCLUSION

Accordingly,

IT IS ORDERED that the **Motion in Limine to Exclude Plaintiffs' Expert (Doc. 36)** is **GRANTED IN PART** and **DENIED IN PART**.

Baton Rouge, Louisiana, this 10th day of June, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA