UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **M.D. CLAIMS GROUP, LLC ET AL.** | CIVIL ACTION |
| VERSUS | |
| **ANCHOR SPECIALTY INSURANCE COMPANY ET AL.** | NO.: 17-00369-BAJ-RLB |

## RULING AND ORDER

Before the Court is the **Motion in Limine to Exclude Reference to Alleged Consequential Damages under Louisiana Civil Code article 1997 (Doc. 46)** by Defendants. Plaintiffs filed an opposition. (Doc. 48). For the reasons stated herein, the **Motion in Limine to Exclude Reference to Alleged Consequential Damages under Louisiana Civil Code article 1997 (Doc. 46)** is **GRANTED**.

### I. BACKGROUND

Plaintiff Darryn Melerine is the majority owner of Plaintiff M.D. Claims Group, L.L.C. ("M.D. Claims"). (*Id.* at 3). Defendants Anchor Specialty Insurance Company ("Anchor") and Lozano Insurance Adjusters, Inc. ("Lozano") hired Melerine and Richard Broom, minority owner of M.D. Claims, to provide claim management services to Anchor's Beaumont, Texas Claims Department. (Doc. 31 at p. 2).[1] Plaintiffs allege that the parties agreed that Plaintiffs would be compensated for their

---

[1] Anchor had previously purchased Lozano, but Lozano continued to exist as a subsidiary entity owned by Anchor. (Doc. 20-1 at p. 2).

1

claim management services based upon a fee schedule. Initially, the nominal daily rates for Melerine and Broom were $650 and $550 respectively. (*Id.* at 2).

Plaintiffs assert that while working for Anchor, the scope of their responsibilities evolved from the duties initially agreed upon by the parties. (Doc. 31 at p. 3). Anchor's Vice President of Claims, Rick Larson, allegedly asked Melerine if M.D. Claims could do additional work for Anchor. (*Id.*). This work allegedly included reorganizing the Texas Claims Department, reducing utilization of independent adjusting firms, relationship building with industry professionals, and recruiting staffing for Lozano and Anchor's offices in Texas and Florida. (*Id.*). Anchor ended its relationship with M.D. Claims in February 2017. (Doc. 20-1 at p. 2).

Plaintiffs assert that Defendants failed to compensate them for the additional services they provided, and that Defendants delayed in compensating them for the services initially agreed upon. (Doc. 48 at p. 3). Plaintiffs claim that M.D. Claims suffered businesses losses as a result of Defendants' delay in payment. Accordingly, Plaintiffs bring a claim under Louisiana Civil Code article 1997, which provides that "an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

Defendants seek to exclude all references to consequential damages at trial because they allege that Plaintiffs have failed to produce documents quantifying or evidencing such damages. Plaintiffs filed their original petition on May 17, 2017. On August 28, 2017, Plaintiffs filed a supplemental and amended complaint, in which they added the bad faith claim under article 1997. Plaintiffs do not dispute that

2

Defendants did not become aware of the specific amount Plaintiffs claim in consequential damages until Plaintiffs submitted a settlement demand on November 21, 2018, in which they claimed $2,738,750 in consequential damages. (Doc. 46-1 at p. 2).

## II. LAW

Federal Rule of Civil Procedure 26(a)(1)(iii) provides that a party must provide to the other parties a computation of each category of damages claimed by the disclosing party and the documents or other evidentiary material on which each computation is based. Fed. R. Civ. Proc. 37(c)(1) provides that "If a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information. . . . at a trial, unless the failure was substantially justified or is harmless." The United States Court of Appeals for the Fifth Circuit has identified a four-factor test to determine whether evidence should be excluded in accordance with Rule 37. A court should consider (1) the party's explanation, if any, for its failure to disclose the information in a timely manner, (2) the prejudice to the opposing party if the evidence is admitted, (3) the possibility of curing such prejudice by granting a continuance, and (4) the importance of the evidence. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

## III. ANALYSIS

An analysis of the four factors weighs in favor of excluding Plaintiffs' evidence of consequential damages. First, the Court must consider Plaintiffs' explanation for not providing a computation of damages and related documents. Plaintiffs assert that

3

they have provided all business documents including bank statements, credit card statements, and IRS records in response to Defendants' discovery request. (Doc. 48 at p. 4). Plaintiffs further argue that because Defendants deposed Melerine and Broom, Defendants had ample opportunity to ask about the consequential damages MD claims suffered. (*Id.* at p. 5). Finally, Plaintiffs assert that when the Magistrate Judge put together a settlement demand, Plaintiffs put forth their requested amount for bad faith damages. (*Id.*)

The Court does not find these arguments to be persuasive. Rule 26(a) explicitly requires Plaintiffs to provide an initial computation of damages and the documents upon which such computation is based. Plaintiffs cannot subvert their obligation by shifting the burden to Defendants to probe evidence of damages in discovery. Other than the amount demanded during settlement negotiations, Plaintiffs admit that they failed to specifically provide Defendants with such a computation. Moreover, the documents that Plaintiffs did provide allegedly show an increase in earnings by M.D. Claims after it terminated its relationship with Defendants, making it nearly impossible for Defendants to determine the basis of Plaintiff's claim. (Doc. 54 at p. 3).

The Court also concludes that Defendants will be prejudiced if evidence of Plaintiffs' consequential damages are admitted. Defendants only learned the specific amount of Plaintiffs' claimed consequential damages, allegedly totaling $2,738,750, in November of 2018. Discovery concluded on July 27, 2018. Accordingly, Defendants did not have any opportunity to probe the merits of Plaintiffs claim. This is especially prejudicial because Plaintiffs' claim for consequential damages is five times the

amount that Plaintiffs' own expert determined that Plaintiffs are owed for the total services they provided. (Doc. 36-4 at p. 4). The very purpose of Rule 26 is to "prevent an ambush, resulting in surprise or prejudice, of undisclosed, or untimely disclosed evidence." *Charles v.* Sanchez, No. EP-13-CV-00193-DCG, 2015 WL 1345385, at *2 (W.D. Tex. Mar. 23, 2015). [2]

Third, a continuation of the trial in this matter is unlikely to cure the prejudice. Even if the Court continues the trial to allow Plaintiffs time to disclose a consequential damages computation, Defendants will still have lost the ability to explore the issue in discovery. Moreover, given the time and expense that has already been expended in litigating this case, the Court is unwilling to reopen discovery to allow Defendants such an opportunity.

The fourth factor weighs in favor of Plaintiffs, as excluding all evidence of consequential damages will necessarily amount to a dismissal of that claim.

Taken together, an analysis of all of the factors weighs in favor of the dismissal of Plaintiffs' consequential damages claim.

---

[2] The Court notes that the Fifth Circuit has held that certain types of damages claims, such as compensatory damages for emotional distress, are necessarily vague and "may not be amenable to the kind of calculation disclosure contemplated Rule 26." *Williams v. Trader Pub. Co.*, 218 F.3d 481, n. 3 (5th Cir. 2000). However, the damages contemplated in article 1997, that is, damages that "are a direct consequence" of an obligor's failure to perform, do not fall within this category. Presumably, Plaintiffs are able to provide some sort of documentation and quantification of the loss to M.D. Claims as a result of Defendants' alleged failure to pay.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion in Limine to Exclude Reference to Alleged Consequential Damages under Louisiana Civil Code article 1997 (Doc. 46) is **GRANTED** and that all references to consequential damages during trial are excluded.

Baton Rouge, Louisiana, this 2nd day of July, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA